IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:25-CR-38 |
| | § | (Judge Marcia Crone) |
| BROOKE CRAWFORD (2) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT BROOKE CRAWFORD'S MOTION IN LIMINE**

The United States files this response to Defendant Brooke Crawford's motion in limine (doc. 417) and shows as follows:

1. Riley Graham's Prior Convictions are Admissible.

As set forth in the government's 404(b) brief (doc. 281), which is incorporated here by reference as if set forth in full, Riley Graham's convictions are admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident regarding his participation in the wire fraud conspiracy pending before the Court.

Riley Graham's convictions are not substantially more prejudicial than probative under *Beechum* because 1) they present plain, clear and convincing evidence of a prior similar offense; 2) they are not too remote in time; 3) intent is a material element; and 4) the proof of intent is needed by the government such that the material prejudice to defendant is substantially outweighed. Doc.

281 at 13-16 (applying the four factors from *United States v. Arteaga-Limones*, 529 F.2d 1183, 1197 (5th Cir. 1976) for the *Beechum* probative-value versus undue-prejudice balancing test).

The fact that Riley Graham will not be sitting at the defense table in the second trial does not change the analysis. The government must still prove its case that Riley Graham a/k/a "David Drake" led the conspiracy to commit wire fraud from inside federal prison, which presents significant proof problems.

Similarly, the government's case against Crawford and Sims presents significant proof problems; primarily, proof of their criminal intent. Crawford and Sims have signaled their plan to present the defense that they were not coconspirators, but "unknowing employees" of the Mildred Drake Family Trust who merely performed various tasks as they were directed by their employer. Under these circumstances, the permissible use of the prior convictions—proof of criminal motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident—applies equally to Crawford and Sims as to Riley Graham.

Moreover, and critical to the present analysis, is that the government will offer evidence through Mark Day that Crawford and Sims knew all about Riley Graham's criminal convictions *before* joining the conspiracy.[1] The evidence

---

[1] In 2018, Riley Graham hired Crawford for her communications background, specifically to rehabilitate his reputation and challenge the legality of his prior felony

will show that, even though Crawford and Sims knew about Riley Graham's prior convictions, they joined the conspiracy to commit similar crimes with him. Thus, their knowledge of Riley Graham's convictions goes directly to show their criminal intent in the conspiracy to commit wire fraud.

Further, the prejudicial impact of the conviction evidence is significantly diminished for the defendants because the jurors will already know that Riley Graham was a federal prisoner for at least five years, which is certainly admissible *intrinsic* evidence of the conspiracy. In terms of prejudicial impact, then, the substantive evidence of his convictions will be no surprise and simply answer the question of "why" he is in prison, which is highly probative of intent, motive, plan, knowledge, absence of mistake, and lack of accident. Of course, appropriate limiting instructions by the Court will further curtail any potential prejudice to the defendants.

Given the difficulty and necessity of proving the coconspirators' intent, the probative value of this evidence significantly outweighs any potential prejudice to the defendants. In sum, the conviction evidence is permissible and critical to the government's case and should be admitted over Crawford's objection. Motion at 2-3.

---

convictions. Also, Day will testify that Sims was a longtime associate of Riley Graham who was present for his prior federal court proceedings.

Similarly, Riley Graham's use of cell phones is important intrinsic evidence of the conspiracy and that should likewise be admitted over Crawfords objection. Motion at 2-3.

2. <u>MDFT's Prior Attempted Purchase of Herbal Cruz is Admissible.</u>

The government's trial presentation will not devote much time to the MDFT fraud scheme to purchase the Herbal Cruz marihuana dispensary. Just a few questions. However, as explained below, certain aspects of that evidence are intrinsic to the present conspiracy. Further, the "purchase" of Herbal Cruz by the MDFT is admissible 404(b) evidence to prove the coconspirators (Riley Graham, Brooke Crawford, and Mark Day) motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident, with respect to their subsequent scheme to purchase Carolina's Contracting.

First, aspects of the Herbal Cruz evidence constitute intrinsic evidence of the conspiracy. Specifically, the government intends to present evidence through Crawford's bank records and Mark Day's testimony that, during the present conspiracy, Crawford laundered thousands of dollars in cash proceeds from the marihuana business in California by depositing them into her Chase Bank accounts that she controlled in the name of the Drake Human Resources Company (DHRC).

The evidence will also show that Crawford then wired that money between her numerous DHRC Chase bank accounts. Critically, the bank

record's (and Day's testimony) will further establish that that Crawford wired a large portion of the Herbal Cruz proceeds to Kennedy Funding in New Jersey to further the Beaumont Line-of-Credit scheme. This ties the Herbal Cruz evidence directly to the present conspiracy. Thus, the government submits that this important evidence is intrinsic to the conspiracy and highly probative of Crawford's criminal intent to participate in the present conspiracy to commit wire fraud. Accordingly, the Court should admit this evidence over Crawford's objection. Motion at 3-4.

Second, the MDFT's fraudulent scheme to purchase Herbal Cruz is admissible as 404(b) evidence to explain the criminal intent behind the coconspirators' (Riley Graham, Brooke Crawford, and Mark Day) scheme to purchase Carolina's Contracting. Mark Day will testify that the scheme to purchase Herbal Cruz was identical to the subsequent scheme to purchase Carolina's Contracting. The Court should admit this evidence over Crawford's objection. Motion at 3-4.

3. Testifying Defendant's Plea Agreement is Admissible.

Crawford seeks to exclude guilty pleas entered by co-defendants. Motion at 12. The United States will offer the guilty pleas of any co-defendant who testify before the jury. The United States will not offer guilty pleas entered by co-defendants who are not testifying.

Admission of guilty plea evidence is proper if it serves a legitimate purpose and the jury is properly instructed. *United States v. Marroquin*, 885 F.2d 1240, 1247 (5th Cir. 1989); *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983) (citations omitted); *see United States v. Valuck*, 286 F.3d 221, 228 (5th Cir. 2002).

Courts around the country have set examples of legitimate purposes, including clarifying the nature of the relationship between the witness and the government, addressing prosecutorial concealment, showing that defendants were not singled out for prosecution, explaining a witness's firsthand knowledge of a crime, and mitigating impeachment on cross examination. *E.g.*, *United States v. Hall*, No. 18-cr-623 (N.D. Tex. –Scholer, J.) (Doc. 901). And as this Court knows, limiting instructions—such as Fifth Circuit Pattern Jury Instructions No. 1.16 (Criminal 2019)—are routinely issued when such evidence is admitted. The guilty-plea evidence should be admitted "for purposes of determining [witness] credibility." *E.g.*, *United States v. Hall*, No. 18-cr-623 (N.D. Tex. –Scholer, J.) (Doc. 901); *United States v. Mazkouri*, 945 F.3d 293, 302 (5th Cir. 2019) ("Legitimate purposes include… clarifying the nature of the arrangement between the Government and the witness for purposes of determining credibility.").

Witness credibility and motives for testifying, especially for co-conspirators, are always paramount considerations for juries and become

especially so when the heart of the crime involves deceit and misrepresentations. Receiving guilty-plea evidence will help answer burning questions on the jury's mind, such as: 1) Why is this witness testifying? 2) What benefit may the witness be receiving from his or her testimony; and 3) Why believe a witness who, notwithstanding the guilty plea, has admitted under oath that he committed fraud. The guilty-plea evidence will address the credibility of the government's investigation.

The United States will offer the guilty plea of any co-defendant who testifies before the jury. The United States will not offer the guilty pleas of non-testifying co-defendants.

4. Defendants are Not Entitled to a Pretrial *James* Hearing.

Defendant's motion in limine asks the court to preclude or limit admission of co-conspirator's statements. Motion at 6-7. They also request a pretrial hearing to determine the admissibility of co-conspirators' statements, requesting that the court conduct a *James* hearing in advance of trial to determine whether such statements are admissible under the Federal Rules of Evidence. Defendants are not entitled to such a pretrial hearing.

To be admissible under Federal Rule of Evidence 801(d)(2)(E), the United States must show:

- there was a conspiracy;
- the statement was made during the course and furtherance of the

conspiracy; and

- the declarant and the defendant were members of the conspiracy.

*United States v. James,* 590 F.2d 575 at 578 (5th Cir. 1979).

The *James* court, however, "also recognized that it is sometimes not reasonably practicable 'to require the showing to be made before admitting the evidence.'" *United States v. Fragoso*, 978 F. 2d 896, 900 (5th Cir. 1992) citing *James, supra.* As a result, the Fifth Circuit "has approved district courts' practice of carrying a *James* motion through trial or at least through presentation of the government's case until a determination of the existence of the Rule 802(d)(2)(E) predicate facts can be appropriately made." *Id.*

"This court has approved the district courts' practice of carrying a *James* motion through trial or at least through presentation of the government's case until a determination of the existence of the Rule 801(d)(2)(E) predicate facts can be appropriately made." *United States v. Fragoso,* 978 F.2d 896 at 900 (5th Cir. 1992). *Fragoso* also cites examples of cases where the procedure of carrying the motion through trial has been employed. *United States v. Lechuga*, 888 F.2d 1472, 1479 (5th Cir. 1989) (denying motion to exclude "at the close of the government's evidence"); *United States v. Perez*, 823 F.2d at 855 (motion carried with the case). *Id.* at 900.

The long-standing procedure in this district is to carry the *James* motion with the trial. The United States urges the Court to make the determination of

whether co-conspirator statements are admissible at the time of trial during the presentation of the United States' case-in-chief to avoid waste of judicial time and resources. The defendant essentially proposes a trial to the court before the trial to the jury.

Here, Crawford's motion does not present any compelling reason that would necessitate a pretrial *James* hearing. Thus, as this Court held in *United States v. Pineda,* 2012 WL 12969825 (E.D. Texas, 2012) (unpublished), "such a hearing would effectively require the court to hear much of the evidence twice, which would be both wasteful and unnecessary." *Pineda* at 2. "Deferring a *James* motion is particularly appropriate in cases where, as here, holding a pretrial hearing would, in effect, result in trying the case twice and wasting valuable judicial resources and time (citations omitted)." *Id.*

The United States represents to the Court that a conspiracy will be established and that the *James* elements will be met. The Court will be able to carry the decision and make a ruling as the statements are admitted pursuant to recognized Fifth Circuit and Eastern District of Texas procedure. The Court should deny Defendant's request for a *James* hearing.

5. Crawford's Request to Limit Case Agent Testimony.

Crawford seeks to limit the testimony of FBI Special Agent Anthony Wright. Specifically, Defendant asks that "the Government's agents and summary witnesses be precluded from characterizing any defendant's conduct as

a "scheme," "fraud," or "conspiracy," from characterizing a defendant's state of mind, and from offering opinions on matters outside their personal knowledge or the scope of any admitted summary under Rule 1006." Motion at 7. Defendant's request is overbroad and should be denied.

First, the government will certainly abide by the Federal Rules of Evidence. For example, agents will testify about their observations, not a defendant's state of mind. However, the terms "scheme," "fraud," or "conspiracy," are elemental to the government's case. It is therefore completely appropriate and within the agents training and experience as fraud investigators to identify aspects of the evidence they contend point to the "scheme," "fraud," and "conspiracy" they found by their investigation this case.

The testifying agents are well credentialed, and their education, training and experience will be presented to the jury when they testify. Defendant's motion is overbroad in her attempts to exclude proper lay testimony from agents.

Second, the government does not intend to call any agent simply to summarize or recap evidence; instead, as this Court has allowed, the case agents will speak to their respective agencies' (FBI and HSI) investigation, specific steps taken, and evidence reviewed. This is not summary testimony, and even if it were, the Court should not preclude summary testimony that has been recognized and accepted by the Fifth Circuit, particularly in complex cases such as this. *See, e.g., United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001),

*cert. denied*, 535 U.S. 1016 (2002) (permitting IRS agent to testify as summary witness where summary was based upon evidence already admitted and was accompanied by limiting instruction); *United States v. Moore*, 997 F.2d 55 (5th Cir. 1993) (permitting IRS agent to selectively summarize facts within the scope of his expertise). Given this circuit's precedent, there is simply no reason to exclude summary testimony, which can be neutralized with a limiting instruction. *See, e.g., United States v. Winn*, 948 F.2d 145, 157–58 (5th Cir. 1991) (concluding that testimony was not reversible error because any prejudice was minimized by a limiting instruction), *cert. denied*, 503 U.S. 976 (1992). Indeed, there will be jury instructions regarding summary testimony, and thus this should be permissible.

6. MDFT's Appeal to the Demographics of Investors is Admissible.

At the first trial, Mark Day testified, in accordance with the MDFT slide-show promotional materials that were entered into evidence, that the MDFT advertised that it existed largely for charitable purposes; principally, the service of "urban and minority" populations. *See* Motion at 8. This evidence is uncontroverted.

Contrary to Defendant's claim that such testimony "has no tendency prove any element," this evidence goes directly to prove the nature of the fraudulent scheme alleged in this case, as well as Crawford's association with it. It is therefore highly relevant and admissible. Similarly, Crawford's claim that

the evidence risks "inflaming the jury" is unavailing. Relevant and admissible evidence such as this is not rendered inadmissible simply because it speaks to the jury's emotions. Indeed, the evidence shows that emotional gravitation of this appeal is exactly why the MDFT proclaimed it. Accordingly, the Court should overrule Crawford's attempt to exclude it.

7. <u>Crawford's Other Requests Are Unnecessary.</u>

The balance of Crawford's motion in limine (parts D, E, G, J, K, and L) are, for the most part, nothing more than a request that this Court issue an order that the United States follow the rules. Such motions are unnecessary. *See, e.g., United States v. Pilisuk*, No. CR22-001 TL, 2023 WL 576523, at *5 (W.D. Wash. Jan. 27, 2023) ("The Court strikes Defendant's motion in *limine* regarding hearsay testimony from investigating officers as unnecessary, as it simply asks the Government to follow the rules of evidence, which all counsel are expected to do as officers of the Court."); *MicroVention, Inc. v. Balt USA, LLC*, No. 819CV01335JLSKES, 2022 WL 18284997, at *7 (C.D. Cal. Dec. 12, 2022) ("It is unnecessary for parties to file motions in *limine* for general instructions that the opposing party must follow the rules of civil procedure or the rules of evidence."); *United States v. Sims*, No. 221CR00026ARTBNW, 2022 WL 2080088, at *1 (D. Nev. June 8, 2022) ("A motion in *limine* is not an appropriate vehicle to seek a general pronouncement that the Federal Rules of Evidence apply."); *Cont'l Poultry Sexing Assn., Inc. v. Dedicated Poultry Serv., Inc.*, No.

2:21-CV-02009, 2022 WL 989129 (W.D. Ark. Mar. 31, 2022) ("When evidentiary issues are almost entirely speculative, an order in limine on admissibility amounts to little more than an order directing the parties to abide by the Federal Rules of Evidence. The Court begins each trial with the expectation that the parties will try their case in accordance with the Rules, and absent a properly-supported need to enter a 'follow the Rules' order, will refrain from doing so. The parties may raise objections as necessary at trial, and the Court will consider issues raised at that time.").

The government respectfully requests that the Court deny Defendant's motion in limine and issue pretrial rulings on the evidentiary issues outlined in this response.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

/s/ John B. Ross
John B. Ross
Assistant United States Attorney
Texas Bar No. 00788325
550 Fannin Street, Suite 1250
Beaumont, Texas 77701
John.Ross5@usdoj.gov

Christopher R. Jackson
Assistant United States Attorney
Eastern District of Texas
Texas Bar No. 24078722
Christopher.Jackson4@usdoj.gov

550 Fannin Street, Suite 1250
Beaumont, Texas 77701

CERTIFICATE OF SERVICE

This is to certify that on the date of its electronic filing, a true and correct copy of the foregoing instrument was served on the attorney for defendant, by electronic means, pursuant to the Local Rules of this Court.

*/s/* John B. Ross
John B. Ross