IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:25-CR-38 |
| | § | (Judge Marcia Crone) |
| BROOKE CRAWFORD (2) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT KELLEE SIMS' MOTION TO DISMISS**

Defendant Kellee Sims has filed a motion (doc. 404) asking the Court to dismiss count one of the second superseding indictment as duplicitous. Sims asks the court to dismiss the indictment if the Court deems it to be duplicitous. She also requests a bill of particulars. As set forth below, the indictment is not duplicitous, and she is not entitled to a bill of particulars. The Court should deny her motion.

The Fifth Circuit has long held that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Mauskar*, 557 F.3d 219, 225 (5th Cir. 2009) (quoting *United States v. Cooper*, 966 F.2d 936, 939 (5th Cir. 1992); *Braverman v. United States*, 317 U.S. 49, 54 (1942)). In considering whether an indictment is duplicitous, the "indictment's allegations" control. *Mauskar*, 557 F.3d at 225 (collecting cases). And "[t]he

fact that the evidence at trial may have established two distinct conspiracies … is irrelevant to the duplicity analysis." *Id.* at 226.

In *United States v. Barrera*, 444 F. App'x 16 (5th Cir. 2011) (unpublished), the Fifth Circuit further explained the proper analysis for allegations that an indictment is duplicitous:

> That the indictment alleged the submission of two false claims in a single count does not render the indictment duplicitous, for a single conspiratorial agreement may have as its object the commission of separate crimes on different occasions. … "The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Mitchell*, 484 F.3d 762, 770 (5th Cir.2007) (citation and internal quotation marks omitted).

*Barrera*, 444 F. App'x at 24; *see also United States v. Lang*, No. 06-30124, 2007 WL 1725548, at *7 (5th Cir. June 14, 2007) (unpublished) (citing *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999), for the same analysis with the addition of whether the indictment allowed the defendant to be convicted by a non-unanimous verdict).

Here, the indictment is not duplicitous. The conspiracy to commit wire fraud charged in the indictment alleges: 1) a common goal; 2) a common scheme to defraud; and 3) overlapping participants.

1. The Common Goal

The common goal of the conspiracy described in the indictment is

personal enrichment "by obtaining money from individual and institutional victims by means of materially false and fraudulent pretenses, representations, and promises." Doc. 225 at ¶ 13. The goal is further explained by the common scheme to defraud. The common scheme to defraud is the essential characteristic that joins the object with the overlapping participants. In this case, the common scheme to defraud is obvious.

2. The Common Scheme to Defraud

The common scheme to defraud identified in the indictment is the Mildred Drake Family Trust (MDFT). Doc. 225 at ¶¶ 2-8, 10, 14a, 14c, 14f, 14g, and 14h. From in or about June 2019 through in or about October 2024, the defendants acted in concert to promote, maintain, and leverage the illusion that the MDFT was a successful business entity operated by Mildred Drake and "David Drake" (who was actually Riley Graham), with a vast network of real estate and wealth. Over the course of the conspiracy, all the defendants grifted off the MDFT fraud scheme for personal enrichment. That was the unchanging crux of the conspiracy.

3. Overlapping Participants

The participants in the conspiracy overlap throughout the fraudulent enterprise. As outlined in the indictment's overt acts, every defendant played a role in the various dealings of the conspiracy. Riley Graham led the conspiracy from his prison cell in FCC Beaumont and directed the actions of Brooke

Crawford and Mark Day from June 2019 through October 2024. Those three defendants conspired together continually for the duration of the enterprise.

In and around June 2019, after Graham and Day persuaded Gary and Sebrina Matthews to "invest" in the MDFT with their personal credit, Rian Graham harvested the Matthews' personal identifier information (PII) for the MDFT. Rian Graham and other coconspirators then obtained credit cards and loans with the Matthews' PII. Similarly, Rian Graham and Troi Graham obtained loans from the SBA in the name of Gary and Sebrina Matthews through fraudulent loan applications that used the Matthews' PII. These loans were obtained without the Matthews' consent. Rian and Troi Graham had access to the Matthews' PII only through the MDFT fraud scheme.

In and around March 2024, when Riley Graham, Brooke Crawford, and Mark Day leveraged the MDFT fraud to "purchase" Carolina's Contracting LLC, they did so to enrich themselves with that company's assets. But they needed help. So Riley Graham brought in Kellee Sims, Raysean Graham, and Sylvia Shann, who were directed to perform various acts to keep the scheme going. Kellee Sims worked closely with Brooke Crawford and Raysean Graham worked with Mark Day. All the coconspirators overlapped significantly in the various dealings of the MDFT from in or about June 2019 through in or about October 2024.

Regarding unanimity, the government submits that there will be little

danger of a non-unanimous verdict after the evidence is presented. Further, a conspirator need not be listed in the overt acts to be guilty. The government is under no obligation to plead or prove an overt act in a wire fraud conspiracy prosecution. "Even though the indictment alleged overt acts in connection with the charge under § 1349, it was not required to do so and those overt acts are not elements of the crime. *Id*. (citing *United States v. Covos*, 872 F.2d 805, 810 (8th Cir. 1989) (quoting *United States v. Brown*, 604 F.2d 557, 560 (8th Cir. 1979))); *United States v. Thornburgh*, 645 F.3d 1197, 1204 (10th Cir. 2011)." *United States v. Jonson*, 2017 WL 930633, at *11 (E.D. La 2017). *See also United States v. Njoku*, 737 F.3d 55, 67 (5th Cir. 2013) (a violation of 18 U.S.C. 1349 does not require proof of an overt act). "The Government's decision to include acts allegedly undertaken in furtherance of the conspiracy does not transform the charge into a conspiracy under § 371 or make those factual allegations additional statutory elements. Rather, those allegations provide factual details concerning the existence, scope, and operation of the alleged agreement." *United States v. Riley Graham*, 2026 WL 3012460, at *3 (Sept. 17, 2026), *report and recommendation adopted*, 2026 WL 3012764. Nevertheless, the Court can provide a unanimity instruction if a concern on that point arises during trial.

In her motion, Sims attempts to compare her crime to that in *Kotteakos v. United States*, 328 U.S. 750 (1946). Motion at 8. But the comparison fails. The

Fifth Circuit handily distinguished a similar comparison in *United States v. Donofrio*, No. 23-40586, 2025 WL 1443577 (5th Cir. May 20, 2025):

> Donofrio cites *Kotteakos v. United States*, 328 U.S. 750, 754-55 (1946), for the proposition that multiple, separate conspiracies existed. But *Kotteakos* is distinguishable. There, the court was provided "proof show[ing] distinct and separate [conspiracies] connected only by the fact that one man ... was a participant and key figure in all." *Blumenthal v. United States*, 332 U.S. 539, 547 (1947). "There was no drawing of all [conspiracies] together in a single, over-all, comprehensive plan." *Id.* at 558. In contrast, in *Blumenthal*, the parties, "[b]y their separate agreements, ... became parties to the larger plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." *Id.*

*Donofrio*, 2025 WL 1443577 at *5 n.6.

Similarly, the Fifth Circuit has long put *Kotteakos* in its proper context when considering variance arguments:

> The appellants argue that the indictment violates the single conspiracy rule of *Kotteakos v. United States*[.] We cannot agree. In *Kotteakos*, the Supreme Court ruled that the defendants, charged with only one conspiracy, had suffered substantial undue prejudice in being convicted on evidence that showed, the Government conceded, eight different conspiracies. The only common nexus among the conspiracies was the participation of one man in each of them. The case before us is more like *United States v. Wayman*, 510 F.2d 1020 (5th Cir. … 1975), where we held that "(p)roof of multiple conspiracies does not automatically constitute a fatal variance from a single (conspiracy) charged . . . ." *Id.* at 1025. Instead, the inquiry must focus on whether the variance affects the substantial rights of the accused. If the Government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights. *Id.* at 1025.

*United States v. L'Hoste*, 609 F.2d 796, 801 (5th Cir. 1980).

Here, the indictment alleges a comprehensive plan to commit various crimes aimed at a single goal. *Kotteakos* does not apply. Sims fails to show that the indictment is duplicitous.

Also, Sims fails to show that she is entitled a Bill of Particulars. It is settled law that a bill of particulars is not required if a defendant is otherwise provided with sufficient information to enable him to prepare his defense and avoid surprise. *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991).

The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense and prevent unfair surprise. *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983). When an indictment sets forth the elements and factual basis of the charged offense in sufficient detail to serve these purposes, a bill of particulars is not necessary. *Id.*

Here, the thirteen-page second superseding indictment exceeds the standards of sufficiency and leaves no doubt as to the nature of the charges against Sims. Doc. 225. The indictment sets forth the timeframe and elements of the violation, identifies the common goal of the conspiracy, explains the common scheme to defraud, and describes the participants. Additionally, the clear information that was provided in the indictment was further explained by

the fulsome discovery that the government provided to Defendant in this case. *United States v. Castro-Flores*, Case No. 12-CR-614, 2013 WL 6858523, at *2 (S.D. Tex. Dec. 30, 2013); *see also United States v. Carrillo-Morones*, 564 F. Supp. 2d 703, 706-07 (W.D. Tex. 2008) (facts in the indictment "together with the discovery provided by the Government, adequately informs the Defendant").

The Court should deny Defendant's motion to dismiss and her request for a Bill of Particulars.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

/s/ John B. Ross
John B. Ross
Assistant United States Attorney
Eastern District of Texas
Texas Bar No. 00788325
John.Ross5@usdoj.gov

Christopher R. Jackson
Assistant United States Attorney
Eastern District of Texas
Texas Bar No. 24078722
Christopher.Jackson4@usdoj.gov
550 Fannin Street, Suite 1250
Beaumont, Texas 77701

CERTIFICATE OF SERVICE

This is to certify that on the date of its electronic filing, a true and correct copy of the foregoing instrument was served on the attorney for defendant, by electronic means, pursuant to the Local Rules of this Court.

*/s/* John B. Ross
John B. Ross