**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:25-CR-38 (2) |
| | § | |
| BROOKE CRAWFORD | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Brooke Crawford's ("Crawford") Motion in Limine (#417). The Government filed a Response (#463), and Crawford filed a Reply (#474). Having considered the motion, the Government's response, Crawford's reply, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

On June 4, 2025, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment (#1) naming Crawford, Rian Graham ("R. Graham"), Troi Graham ("T. Graham"), and two other codefendants. On February 5, 2026, a First Superseding Indictment (#110) was issued, which added Kellee Sims ("Sims") and two other codefendants. On September 9, 2026, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a single-count Second Superseding Indictment (#225) charging Crawford, R. Graham, T. Graham, Sims (collectively, "Defendants"), and four other codefendants with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Jury selection and trial are currently scheduled to begin on November 30, 2026.

II. Analysis

The court has inherent authority to manage the course of trials and thus rule on motions in limine. *See United States v. Logwood*, No. 3:24-CR-00017, 2025 WL 1908976, at *1 (W.D.

La. July 10, 2025) (citing *Coates v. TNT Crane & Rigging, Inc.*, No. MO:22-CV-00018-DC, 2023 WL 11915701, at *1 (W.D. Tex. 2023)). A motion in limine "is not a definitive ruling on the admissibility of evidence." *7X Cattle Co., L.L.C. v. Brandstadt*, No. 6:22-cv-396-JDK, 2025 WL 2269797, at *1 (E.D. Tex. July 15, 2025); *Green Acres Baptist Church, Inc. v. Brotherhood Mut. Ins. Co.*, No. 6:23-cv-566-JDK, 2025 WL 747818, at *1 (E.D. Tex. Jan. 17, 2025); *Ogden v. Cozumel, Inc.*, No. A-18-CV-00358-DAE-SH, 2019 WL 5295495, at *1 (W.D. Tex. Oct. 18, 2019) (stating that "[a]ll rulings on motions in limine are preliminary evidentiary rulings [and are] not final" (citing *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3877291, at *1 (E.D. Tex. June 27, 2016))). Rather, an order granting a motion in limine is an order requiring the proponent of the evidence to approach the bench and seek leave of court prior to offering the disputed evidence at trial. *7X Cattle Co., L.L.C.*, 2025 WL 2269797, at *1; *Green Acres Baptist Church, Inc.*, 2025 WL 747818, at *1; *see King v. King*, 117 F.4th 301, 306 (5th Cir. 2024); *Rojas v. Richardson*, 703 F.2d 186, 188 (5th Cir. 1983).

The United States Court of Appeals for the Fifth Circuit has observed that "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980); *see Rojas*, 703 F.2d at 189; *Smith v. China Mfrs. All. L.L.C.*, No. 2:19-CV-01111, 2025 WL 1839905, at *2 (W.D. La. July 3, 2025). Nonetheless, they are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues. *United States v. Spotted Horse*, 916 F.3d 686, 693 (8th Cir. 2019); *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Motion in limine rulings "are not binding on the trial judge, and the judge may

always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner); *United States v. Thornhill*, 940 F.3d 1114, 1121 (9th Cir. 2019); *see Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 418 (5th Cir. 2020).

"[M]otions in limine may [also] be used to secure a pretrial ruling that certain evidence is admissible." *United States v. Barefoot*, No. 3:22-CR-13-DPJ-LGI, 2023 WL 6319893, at *1 (S.D. Miss. Sept. 28, 2023) (quoting *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012)); *see United States v. Zelaya*, No. 22-77, 2024 WL 4719502, at *2 (E.D. La. Nov. 8, 2024); *United States v. Kirk*, No. SA11-CR-449(2), 2013 WL 6198221, at *1 (W.D. Tex. Nov. 27, 2013) ("[T]he Government's Motion for Early Admissibility Rulings asked the Court to rule on the admissibility of certain evidence prior to trial and as such, it was, for all intents and purposes, a motion in limine.").

A. Crawford's Motion in Limine

1. Request One

Crawford first requests that the court prohibit any reference to or about Riley Graham's prior convictions, their nature and details, and his prison disciplinary history. She contends that the prior actions do not bear on whether she knew or did not know of the alleged conspiracy. The Government asserts that such evidence, as set forth in its Brief in Support of Admissibility of Defendant's Prior Felony Convictions Under Rule 404(b) (#281), can be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b).

A defendant may not be proven guilty by "showing that [she] associates with unsavory characters." *United States v. Romo*, 669 F.2d 285, 288 (5th Cir. 1982). Therefore, a third-party's criminal conviction without evidence connecting that person to an alleged conspiracy is irrelevant to any issue in a case and is highly prejudicial. *See United States v. Portillo*, 969 F.3d 144, 178 (5th Cir. 2020). When a conspiracy is charged, however, evidence of a defendant's coconspirator's action are "often highly relevant." *Id.* A defendant's guilty knowledge and participation in the conspiracy "may be inferred from the development and collation of circumstances." *Id.* This includes evidence of the defendant's presence and association with other members of the conspiracy. *Id.* The Fifth Circuit has held "evidence about an associate's guilt is admissible so long as it has some tendency to establish the elements of a conspiracy" against the defendant. *Id.*

Here, the challenged evidence is relevant to the conspiracy charge against Crawford. The Government maintains that it intends to introduce this evidence to prove that Riley Graham led the conspiracy to commit wire fraud from prison and that Defendants knew of his criminal conviction prior to joining the conspiracy. In *Portillo*, the court held that the evidence of a third-party's criminal convictions was especially relevant where defendants asserted that they were unaware of criminal activity. *Id.* at 179. Specifically, such evidence is relevant when there is a temporal proximity to the third-party's criminal conduct and the charged conspiracy. *Id.* Similarly, in this case, the Government contends that Defendants, specifically Crawford and Sims, have signaled their plans to present a defense indicating that they were "unknowing employees" of the Mildred Drake Family Trust.

Riley Graham, an alleged coconspirator, was disciplined for possessing a contraband cell phone in prison. The Government contends that the phone was used to further this conspiracy—Riley Graham used it to contact his coconspirators and alleged victims. Riley Graham, like the third-party in *Portillo*, committed this offense while Crawford was associated with him after she was hired to rehabilitate Riley Graham's reputation and challenge the legality of his prior felony convictions. Therefore, his prison disciplinary history likely undermines Crawford's defense that she was unaware she was engaging in criminal activity. The evidence is relevant as to establishing Crawford's intent in joining and partaking in the charged conspiracy and is likewise relevant as to how the conspiracy was, in part, carried out.

As to the criminal convictions for Riley Graham's 2005 money laundering conviction and his 2008 mortgage fraud convictions, the court agrees with Crawford that evidence of these actions would be far more prejudicial that probative. Here, the proffered convictions fall outside of the temporal proximity that *Portillo* requires. The details of the convictions would also reveal that Riley Graham previously employed a girlfriend, as the Government alleges Crawford to be here, to create false documents and perpetuate the fraud. Given the similarities, there is a high risk the jury would use the evidence for an impermissible purpose.

Further, the Second Superceding Indictment charges the conspiracy from June 2019 to October 2024, more than 10 years after either of Riley Graham's felony convictions. In *Portillo*, the third-party's criminal conviction "overlapped" with the charged conspiracy. *Id.* at 179. Meanwhile, here no such overlap exists. Therefore, the details of these convictions are inadmissible as being highly prejudicial "guilty by association" evidence. *See id.* at 178. This evidence, however, is admissible for impeachment purposes if Riley Graham testifies as a witness.

Therefore, Crawford's request is GRANTED in PART, and the Government will be prohibited from mentioning Riley Graham's 2005 money laundering conviction and 2008 fraud conviction and from establishing Crawford's intent or her guilt using these convictions. If, however, Riley Graham testifies as a witness, evidence of these convictions may be used for impeachment purposes. The jury will receive a limiting instruction that a coconspirator's criminal activity cannot be used to prove the defendant's guilt and, instead, can only be used for limited purposes. *See id.* at 179-80.

2. Request Two

Crawford requests that the court prohibit any reference to the Northeastern Management Inc., doing business as Herbal Cruz, transaction. It its response, the Government contends that this evidence is intrinsic to the crime charged. "'Other acts' evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." *United States v. Williams*, 30 F.4th 263, 267 n.3 (5th Cir. 2022); *United States v. Berreles*, 783 F. App'x 453, 454 (5th Cir. 2019) (quoting *United States v. Crawley*, 533 F.3d 349, 353-54 (5th Cir. 2008); *accord United States v. Lucas*, 849 F.3d 638, 643 (5th Cir. 2017); *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013). Intrinsic evidence is "admissible to complete the story of the crime by proving the immediate context of events in time and place." *United States v. Shaughnessy*, 157 F.4th 378, 388 (5th Cir. 2025). Intrinsic evidence is also admissible to permit the jury to "evaluate all of the circumstances under which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (citing *United States v. Randall*,

887 F.2d 1262, 1268 (5th Cir. 1989)); *accord Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 967 (5th Cir. 2019).

When a conspiracy is charged, courts in the Fifth Circuit give great latitude in classifying evidence as intrinsic. *See United States v. Girod*, 646 F.3d 304, 320 (5th Cir. 2011). Acts committed in furtherance of the charged conspiracy are themselves part of the act charged. *See United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998) (citing *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)). Thus, evidence of such acts constitutes intrinsic evidence—it is direct evidence of the charged conspiracy itself. *See Miller*, 116 F.3d at 682; *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995).

The Government argues that the Herbal Cruz evidence is admissible as intrinsic evidence because Mildred Drake Family Trust's purchase of Herbal Cruz helped fund the Beaumont Line-of-Credit scheme. General introductions of this evidence are admissible because it is intrinsic as to how Defendants perpetuated the charged scheme. Money gained through Herbal Cruz flowed through a bank account Crawford controlled in the name of Drake Human Resources Company, which eventually funded and furthered the Beaumont Line-of-Credit scheme.

The Government's response indicates that it intends to present the evidence to show that Crawford "laundered drug proceeds" through her accounts. It is unlikely, however, that such a characterization of the deposits is "inextricably intertwined." The Government did not charge Crawford with money laundering. While the deposits into the accounts themselves may be intrinsic evidence of Crawford's involvement in the charged crime, presenting or characterizing evidence as the laundering of drug proceeds is highly prejudicial.

The Government's response has explained inadequately how evidence relating to Crawford's alleged money laundering through Herbal Cruz is relevant and probative to how it alleges the conspiracy was furthered. Therefore, Crawford's request is GRANTED in PART. The Government is precluded from characterizing any deposit or transfer of funds to or from Herbal Cruz as money laundering or drug proceeds but may offer evidence of such deposits or transfers without such characterization.

3. Request Three

Crawford requests that the court prohibit the Government from offering a codefendant's guilty plea as evidence of her guilt. This request is GRANTED. The parties agree that a testifying codefendant's plea agreement may be offered for the purpose of assessing that witness's credibility. The Government, however, cannot argue or infer that the guilty plea of a codefendant is evidence of the guilt of any of the defendants currently on trial.

4. Requests Four and Five

In her fourth request, Crawford asks that the Government be precluded from eliciting opinion or reputation testimony about her temperament, personality, or character. Her concerns arise from testimony given in Riley Graham's trial where a witness described her as "abrasive," "short-tempered," and "not a good people person."

Similarly, Crawford's fifth request asks that the Government be directed to instruct its witnesses not to testify as to their assumptions, guesses, or beliefs about her knowledge, intent, authorship of documents, or control of accounts, and that the court require a foundation of personal knowledge before such testimony is elicited. Her concerns as to this request are likewise

related to testimony elicited in Riley Graham's trial, wherein a witness was "assuming" or "guessing" as to Crawford's involvement.

The Government raises no objections to these requests in its response. Therefore, given that the Government elicited testimony about Crawford's character previously and that a witness assumed or guessed as to Crawford's involvement, there is a likelihood similar testimony could be elicited in this trial. Crawford's fourth and fifth requests, therefore, are GRANTED as unopposed.

5. Request Six

Crawford's sixth request asks that the court prohibit the statements of alleged coconspirators. It also requests a *James* determination. A defendant may request a *James* hearing, or determination as in this case, in advance of trial to determine whether such statements are admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979). The Government opposes Crawford's motion, arguing that Defendants are not entitled to a *James* hearing in advance of trial.

"Whether a *James* hearing is necessary in a particular case is within the discretion of the trial court." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (citing *United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992)); *see United States v. Carreon*, 242 F. App'x 221, 224-25 (5th Cir. 2007); *United States v. Mathis*, 458 F. Supp. 3d 559, 563 (E.D. Tex. 2020). In determining whether the statements are admissible, a district court need not hold a pre-trial hearing and may conditionally admit the challenged statement(s) until a determination of the existence of the Rule 801(d)(2)(E) predicate facts can be appropriately made. *United States v. West*, 58 F.3d 133, 142 (5th Cir. 1995); *United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1224 (5th Cir. 1994)

(citing *Fragoso*, 978 F.2d at 900); *see James*, 590 F.2d at 582-83 (district court may conditionally admit coconspirators' statements); *Mathis*, 458 F. Supp. 3d at 563. In some cases, however, "judicial economy suggests that express findings on admissibility should be made before the coconspirator statements are introduced." *Fragoso*, 978 F.2d at 900. Nevertheless, the decision is a matter "committed to the broad discretion of the trial court." *Id.* (citing *United States v. Cantu*, 557 F.2d 1173, 1180 (5th Cir. 1977)); *Mathis*, 458 F. Supp. 3d at 563.

In this instance, Crawford's request does not present a compelling reason that would necessitate a pre-trial *James* ruling. Indeed, granting the request for a *James* determination would effectively require the court to hear much of the evidence twice, which would be both wasteful and unnecessary. Deferring a *James* determination "is particularly appropriate in cases" where, as here, "holding a pretrial hearing would, in effect, result in trying the case twice and wasting valuable judicial resources and time." *United States v. Carroll*, No. 99-98, 2000 WL 45870, at *5 (E.D. La. Jan. 20, 2000) (citing Go*nzalez-Balderas*, 11 F.3d at 1223); *accord Mathis*, 458 F. Supp. 3d at 563; *see United States v. Acosta*, 763 F.2d 671, 679 (5th Cir. 1985) (upholding the district court's determination that "if we had to have a separate independent hearing insofar as the conspiracy is concerned, we in effect would be trying this lawsuit two times"); *United States v. Fleifel*, 3:12-CR-318-D(3), 2014 WL 6633049, at *4 (N.D. Tex. Nov. 24, 2014) (denying defendant's request for a hearing to determine the admissibility of coconspirator statements where it "would be burdensome and effectively result in a mini-trial of potentially considerable length").

The court is of the opinion that conducting a pre-trial *James* determination in this case is unwarranted. Accordingly, Crawford's request is DENIED.

6. Request Eight

Crawford's eighth request asks that the court prohibit an agent's testimony that provides an overview on what other documents or evidence will reveal. In its response, the Government states that it does not intend to offer summary evidence through its case agents. To the extent that she seeks to bar this type of testimony, her request is DENIED. *See United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (allowing summary evidence and testimony); *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995) ("The agent's testimony was helpful to the jury in explaining the charts and the documents he relied upon in preparing them.").

Further, Crawford requests that the court prohibit an agent from making legal conclusions or otherwise referring to or characterizing her conduct as a scheme, fraud, or conspiracy. Especially in complex cases, testimony tying specific exhibits to substantive indictment counts is permissible. *See United States v. Baker*, 923 F.3d 390, 397-98 (5th Cir. 2019). In *Baker*, the Fifth Circuit found that an FBI special agent's testimony in a securities fraud prosecution was permissible summary testimony where an agent's testimony consisted of reading contents of exhibits and sorting through evidence to show how documents related to each other and to charges in the indictment.

Here, this matter has already been declared a complex prosecution (#147). The witness and exhibit lists that the parties submitted indicate that extensive evidence, some of it rather complicated, will be introduced at trial. In light of *Baker*, the type of testimony Crawford seeks to prohibit, an agent tying specific evidence to the single-count indictment, is appropriate here. At this juncture, without further context, granting this request as to the characterization of Crawford's conduct would be too broad in light of the discussion above. The court cautions,

however, that any testimony drawing a legal conclusion as to Crawford's guilt—that she was a part of the conspiracy or was a coconspirator—is impermissible. *See United States v. Daggs*, 448 F. App'x 504, 507 (5th Cir. 2011) (finding that testimony that the defendant "was involved in a conspiracy with somebody" was an improper legal conclusion). As such, Crawford's request is DENIED.

7. Request Nine

Crawford's ninth request asks the court to prohibit any reference or statement about the demographics of those targeted by Defendants' 2019 investment solicitations. As the Government's motion points out, this evidence may be relevant to demonstrate how Defendants perpetrated the alleged conspiracy. Crawford's request is DENIED.

8. Request Ten

In her tenth request, Crawford asks that if the Government seeks to introduce evidence of Small Business Administration ("SBA") Economic Disaster Injury Loan applications against her, it must make a proffer establishing how the evidence is connected to her outside the presence of the jury. Crawford also requests that the jury be instructed if such evidence is admitted, it may not be considered against any defendant against whom it has not been connected.

Crawford's request is GRANTED, and the Government shall not suggest that she participated in, knew of, or benefitted from the SBA loan applications outside a proffer establishing that such the evidence is related to her. The court will supply a limiting instruction if such evidence is admitted.

9. Requests 7, 11, and 12

Several of Crawford's requests seemingly request that the court direct the Government to "essentially follow the rules of evidence." *See Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-00230-JRG, 2019 WL 1642714, at * 3 (E.D. Tex. Apr. 15, 2019) (highlighting that motions where a party requests that the rules of evidence are followed are rarely granted). Therefore, Requests 7, 11, and 12 are DENIED as MOOT.

## III. Conclusion

Consistent with the foregoing analysis, Crawford's Motion in Limine is GRANTED in PART and DENIED in PART. The Government is prohibited from discussing, arguing, or offering any evidence on the following matters without first approaching the bench:

1. The details of Riley Graham's 2005 money laundering conviction and 2008 fraud conviction or otherwise attributing such evidence to Crawford's intent or to her guilt;

2. Characterizing any deposit or transfer of funds as money laundering or drug proceeds;

3. Eliciting opinion or reputation testimony about Crawford's temperament, personality, or character;

4. Testimony as to a witness's assumptions, guesses, or beliefs about Crawford's knowledge, intent, authorship of documents, or control of accounts; and

5. Any argument or reference that Crawford participated in, knew of, or benefitted from the SBA applications.

SIGNED at Beaumont, Texas, this 24th day of November, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE